(42 South. 660.)

No. 16,228.

STATE v. HOPKINS.

(Nov. 26, 1906. Rehearing Denied Jan. 7, 1907.)

1. HOMICIDE—EVIDENCE—CORONER'S INQUEST—CERTIFICATE OF DEATH.

The defendant was tried on charge of murder and found guilty of manslaughter.

Informality in the deputy coroner's certificate of death was the first ground.

(a) Proof of the officer's signature and the purported procès verbal did not have the signatures of the members of the coroner's jury.

(b) The deputy is authorized to sign a certificate. It does not require proof of its genuineness.

(c) There were two dates in the certificate, one incorrect, and the other correct. The latter cured the former.

The names of the jurors who held the inquest should have been given; but it was not the only evidence.

The proof of the death or cause of death by certificate is not proof of guilt or innocence. They do not implicate the accused. It is rem ipsam evidence.

The bill of exception did not set forth that the certificate of death was the only proof.

The per curiam showed that the accused pleaded self-defense, that she shot the deceased, that there was no denial of the fact that he died of wounds inflicted by her, and that the defendant asked the court to charge the jury touching self-defense.

2. CRIMINAL LAW—INSTRUCTIONS—EVIDENCE TO SUSTAIN—SPECIAL INSTRUCTION—SELF-DEFENSE.

The judge was asked to instruct the jury as to the law as laid down in State v. Thompson, 13 South. 392, 45 La. Ann. 969. In the cited case the defendant retreated. In the present case the judge states in the per curiam that the defendant did not retreat.

The court could refuse to give instructions not supported by the facts. See Marr's Criminal Jurisprudence of Louisiana, § 36.

The trial judge instructed the jury at some length regarding self-defense.

3. SAME — APPEAL — NEW TRIAL — NOT REVIEWABLE.

The application for a new trial presented questions of facts within the lower court's discretion to finally decide.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliott, Judge.

Minnie Hopkins was convicted of manslaughter, and appeals. Affirmed.

Thomas Milton Bankston and William Breed Kemp, for appellant. Walter Guion, Atty. Gen., and Robert Stephen Ellis, Dist. Atty. (Lewis Guion, of counsel), for the State.

BREAUX, C. J. The defendant, Minnie Hopkins, was charged with the murder of Isaac Moore on the 22d day of April, 1906, by the grand jury of Tangipahoa, at the general term of the court in that year.

Her trial began and ended on the 11th day of June of the same year.

She was found guilty of manslaughter, and sentenced to serve 15 years in the penitentiary.

She, through her counsel, reserved four bills of exceptions.

The first was taken to the court's ruling admitting in evidence the certificate of death of Isaac Moore at the Charity Hospital in New Orleans, signed by Dr. S. J. Mioton, assistant coroner of the city. It bore the impress of the seal of the coroner's office.

This certificate was offered to prove that Isaac Moore died on the 24th of April, 1906; also to prove the cause of his death.

Counsel for the accused objected to the document on the ground that the signature had not been proven; that the instrument bore no signature of any of the members of the coroner's jury; that the indictment charged defendant with having killed Isaac Moore on the 22d of April, 1906, while the inquest was held in 1905.

The court overruled the objection and admitted the certificate.

The second bill of exceptions was taken to the refusal of the trial judge to instruct the jury that defendant had the right to act upon appearance at the time of the homicide, although it afterward became evident that defendant was mistaken, and that she was not threatened with death or with great bodily harm; that the jury must not consider whether there was actual danger to the defendant or not, but if, from the evidence, the accused had reason to believe she was in danger, she had the right to kill.

The trial judge declined to give the instruction and said that he had fully explained to the jury in the general charge.

The defendant, through counsel, also asked the judge to instruct the jury regarding the law as laid down in the case of State v. Thompson, 45 La. Ann. 969, 13 South. 392.

This the judge refused to do, on the ground that the decision was not pertinent to the issues of the pending case.

The written charge of the judge is before us.

A motion for a new trial was made, setting forth that since the trial defendant had discovered new evidence, which was material to her defense.

The court refused to grant a new trial.

In the per curiam, the court stated, substantially, that there was want of diligence, that the defense could have procured the presence of the new witnesses, and that the defense did not explain how it was that it was not known that the witnesses would testify in regard to the homicide as alleged in the application for a new trial.

There were affidavits filed which we will consider later.

We take up the grounds, urged in the first bill of exceptions, touching the certificate of the assistant coroner.

It is in place to preface our decision with the statement that a deputy coroner is a constitutional officer, and that he is authorized to act for the coroner and to hold a coroner's inquest. State v. Duffy, 39 La. Ann. 419, 2 South. 184.

He is also authorized to make a report of death, give the name of the deceased, and to state the cause of death in his report of the inquest. The certificate admitted in evidence charged no one with having killed Issac Moore. Rev. St. § 672.

He, as well as the coroner, has authority to issue a certificate, which may be admitted in evidence.

This court has decided that such a certificate is admissible. State v. Parker, 7 La. Ann. 85; State v. Duffy, 39 La. Ann. 421, 2 South. 184.

It is also contended on the part of the defendant that the signature of the assistant coroner did not make proof of itself, and that it has not been proven.

It is well settled that the court may take judicial notice of the signature of the officer authorized to issue a certificate.

His signature is presumed genuine. The certificate was objected to on the following as one of the grounds:

The document (objected to) reads an inquest held in the city of New Orleans on 24th of April, 1905, and the indictment which the "accused is on trial for charges her, the accused," Minnie Hopkins, with having killed Ike Moore on the 22d of April, 1906.

This was evidently an oversight, and the last date evidently is the correct date. The names of the jurors at the coroner's inquest should, unquestionably have been given, and the certificate should not have been issued in the form it was issued. The document was not in form; but we are informed by the per curiam of the court, not challenged by the defendant, that the plea of defendant (defendant interposed the plea of self-defense), her testimony and that of other witnesses proved all that is stated in the certificate. Upon this question, see State v. Viola Lamont, 115 La. 568, 39 South. 602.

The defendant, through counsel, asked the court to charge that, if she "believed her life in danger," she had the right to kill.

Moreover, the bills of exceptions do not set forth that there was no other evidence before the jury on the subject. The case as it is before us shows that there was other evidence of the corpus delicti.

We pass to the next bill of exceptions here noted; that is, touching the refusal of the judge to instruct the jury in accordance with the request of defendant's counsel, to wit, that defendant had the right to act as she did upon appearance that her life was in danger; that it is not for the jury to consider whether there was actual danger, but to consider whether the defendant was warranted in thus believing.

The charge of the judge sufficiently defined the plea of self-defense, and sufficiently covered all the points urged by defendants, as stated in this bill of exceptions.

As the charge was ample upon this point, the judge could properly refuse to charge further upon the subject.

In the third bill of exceptions it appears that the defendant asked the court to instruct the jury in accordance with the law laid down in the Thompson Case before cited.

We are informed by the per curiam of the judge that the requested charge was not pertinent to the facts of the cause.

He satisfactorily sets out why it was not.

In the Thompson Case, referred to, the defendant had retreated in good faith and was pursued. Here the learned judge stated there was no retreat or appearance of retreat by the accused.

The judge could not be required to state a rule which applies in case of a retreat in a case in which there was no retreat.

From his point of view the cited case had no possible bearing on the facts of the case in hand.

The fourth and last bill of exceptions was taken to the court's ruling refusing a new trial.

Affidavits were made by two persons, who stated facts to which they certified they were willing to swear.

The testimony stated by them was material enough, but the trouble is that it was brought to the court's attention after verdict.

In view of the facts stated, it is strange that these two witnesses remained thus silent, although we infer they knew that the defendant was put on her trial, or, if they did not know, there is no testimony showing that they were unaware of it.

The district judge was not impressed by these belated statements.

These witnesses state that they were present at the homicide. Why is it that the defendant failed to have all the witnesses present cited? Her own sister also was present at the homicide. She was not cited, and she was not called as a witness.

We feel that we must coincide with the district judge in his ruling. There is no ground for us to set aside the verdict on these affidavits of newly discovered evidence.

The district judge saw these parties. He had some opportunity to form an opinion upon personal observation. These are considerations which cannot be overlooked by an appellate tribunal.

There is a strong affidavit made by counsel for defendant, setting forth that they did not know, at the time of the trial, of the facts to which affiants said they would testify in case a new trial was granted, and that they had been diligent.

There is no question of veracity here between parties.

Under a well-established rule weight must be given to the opinion of the judge of the court of first instance in matters relating to management and direction of the course of the trial.

The judge thought that the defense had not been prejudiced by want of time for preparation for the trial.

Counsel took a different view after verdict.

The genral rule will have to govern. No good reason suggests itself why an exception should be made in this instance.

The distance between the place of the shooting and the courthouse is 14 miles. There were seven intervening days between the date of the shooting and the date of the trial of the case. The judge evidently thought that all the witnesses could have been summoned, and that the defendant had ample time and opportunity to have had them summoned.

The judge evidently did not believe the affidavits of the two witnesses, Brown and Ruskins, who swore that they were present at the homicide. We will not hold that he should have believed them, because we have no ground upon which to base any such decision.

It appears that three members of the jury took an affidavit, some time after the verdict had been returned by them, that they would have rendered a different verdict, had they heard the testimony of the affiants to which we have before referred.

We can only say in answer that there would be no end to trials if jurors could be heard to attack their own verdict as attempted here, based upon the affidavits of persons made after verdict which had not been brought to the attention of the court and jury at the trial.

It is for the court to pass upon the sufficiency of new affidavits for a new trial, and not for jurors to assume that authority and to attempt to have their own acts annulled in that manner. The attempt of these jurors cannot meet with the least sanction.

We have gone over the points presented in this case, and have considered each. It is plain, from the whole case as brought up before us by the record and as set forth in the recitals of the court, that there was no prejudicial error committed.

We do not think that we should disturb the verdict found.

It only remains for us to affirm the verdict and sentence and judgment.

They are affirmed.