McCALEB, Justice.
 

 Appellant was tried by jury for armed robbery, found guilty as charged and sentenced to serve fifteen years at hard labor in the state penitentiary. Pie has appealed relying on twelve of sixteen bills of exceptions
 
 [1]
 
 reserved by counsel for a reversal of his conviction.
 

 
 *191
 
 The facts are these: On the night of November 8, 1968 Floyd Craig, a bus operator for the Shreveport Transit Company, was ordered to stop by two young Negroes with handkerchiefs over their faces. One of the men was armed with a 12 gauge sawed-off shotgun. Craig handed the money box over to the men and also the money changer, in obedience to an order of the one with the gun. The robbers then left the bus, ran up Gary Street to a car parked in front of the corner house where they were driven off by a third man, James Moore, Jr. Moore,
 
 [2]
 
 who testified for the State on the trial of the case, identified the two men as appellant and one Alvin Reliford.
 

 Douglas, along with Reliford, was arrested on November 23, 1968 and admitted his part in the robbery on November 26. He also gave a recorded statement on November 27, 1968. Thereafter, on December 6, 1968, Douglas and Reliford were jointly charged in this proceeding. Reliford subsequently pleaded guilty to simple robbery and the armed robbery charge against him was dismissed.
 

 In brief and argument here, counsel for appellant has assigned three specifications of error and has grouped the bills of exceptions which pertain to each specification. We shall discuss these specifications in the order presented by counsel.
 

 Specification of Error No. 1 relates to Bills of Exceptions Nos. 1, 3, 13 and 15. In this specification, counsel decláres that the composition of the jury commission, the general venire and petit jury venire was illegal as it factually operated to produce unconstitutional discrimination against members of the Negro race and that these official bodies are selected in such a manner so as to exclude from jury service rural, lower economic and minority groups. This is said to have resulted from the circumstance that the jury commission for Caddo Parish is composed solely of members of the white race, and also because the general venire is chosen from the registration rolls. It is further stated that discrimination has been established by the fact that, out of a total of 27 petit jurors called for voir-dire examination, only two Negroes were included. Furthermore, counsel argues that, since the clerk’s minutes indicate that 29 out of a total of 100 petit jurors were excused from service without reasons being given, this in itself produces class discrimination and has denied appellant equal protection of the law.
 

 We find no merit in these postulations. They are all of a most general na
 
 *193
 
 ture and none is sufficient, nor is a combination of the complaints sufficient, to establish any discrimination against members of the Negro race or that the venires were selected in such a manner as to constitute a deprivation to appellant of a fair and impartial jury to try his case. In complaining of discrimination appellant had the burden of establishing that such was the fact, for purposeful discrimination will not be assumed. State v. Williams, 252 La. 1023, 215 So.2d 799 (1968), and cases there cited.
 

 The fact that the jury commission was composed of members of the white race furnishes no reason for saying that it was constituted improperly, nor does the fact that the general venire was selected from the registration rolls provide a sound basis for the complaint of denial of equal protection. See State v. Poland, 255 La. 746, 232 So.2d 499 (1970).
 

 Moreover, the fact that 29 jurors were excused from petit jury service by the court does not of itself establish discrimination against race, color or creed. Indeed, the law (Art. 783 C.Cr.P.) empowers the trial judge to excuse members of the petit jury venire at any time prior to trial. The trial judge in his per curiam states that these persons were excused by him only after they had exhibited valid reasons for not serving. Finally, the circumstance that there were only two Negroes, out of a total of 27 jurors called for voir-dire examination, does not show purposeful discrimination against members of the Negro race from jury service.
 

 The second Specification of Error pertains to the alleged improper admission of appellant’s confession (oral and recorded) at the trial and also to evidence seized by the investigating officers as a result of this confession. This specification comprises Bills Nos. 5, 6, 8, 9, 10, 11 and 15. Counsel argues that the State failed to carry the burden of establishing that the confession given by appellant was free and voluntary beyond a reasonable doubt as required in some of our decisions (see State v. Ferguson, on rehearing, 240 La. 593, 124 So.2d 558, and the cases there cited) ; that, additionally, appellant was denied the right to remain silent and to invoke his privilege against self-incrimination and that he was not informed of all his substantive rights as provided in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 A review of the testimony taken out of the presence of the jury, when the foundation for the admission of an oral and a subsequent recorded confession was being laid, reveals: During the afternoon of November 23, 1968, approximately two weeks after the armed robbery, Officer Lynch of the police force of the City of Shreveport, while on patrol duty with a fellow officer, observed two young Negroes
 
 [3]
 
 walking in
 
 *195
 
 the vicinity of Arkansas and Milam Streets. At that time the officers did not know the identity of the men. However, upon being seen by the officers, the men started to run. The officers followed and finally apprehended them after wounding the one later identified as Reliford. The officers knew that two young men were wanted as escapees,
 
 [4]
 
 or rather for being A.W.O.L., from the Juvenile Training Center at Scotlandville, Louisiana and, upon his arrest, appellant was brought to the city jail and confined. Lynch says that he did not try to interrogate appellant as such matters are turned over to the Detective Bureau for investigation. Detective Nichols, who had been told by an informer that appellant and Reliford had committed the armed robbery in question, interviewed appellant for about 15 or 20 minutes at the city jail on the following evening, November 24. The officer stated that prior to questioning appellant was given the standard “Miranda” warnings and that, on this occasion, he denied any knowledge of the crime. Nichols then stated that he suggested that appellant take a polygraph test to which appellant not only agreed, but insisted that it be done.
 

 Accordingly, arrangements for the taking of the test were made with Mr. Houston, the polygraph operator of the Department of Public Safety and on the morning of November 26, appellant was brought to Mr. Houston’s office. Houston states that preparatory to the test he administered the standard Miranda warnings to appellant, who then refused to take the test and, instead, requested to talk with a detective. In response to this request, Detective Nichols called on Detective Burns and his partner, Detective Merolla, to interview appellant. These detectives testified that, when appellant was brought into the interrogation room, he was again given the standard Miranda warnings and, after he had signed a written waiver of the rights enumerated in the warning, he gave an oral statement concerning his participation in the armed robbery as well as a recorded statement pertaining to another offense. In his oral statement, appellant admitted he had used a sawed-off shotgun in the robbery and told the detectives where the gun could be located.
 

 The following day, November 27, appellant was again interviewed by Detectives Nichols and Burns and, after being given the Miranda warnings, he signed a waiver of his rights and recited his previous oral confession, which was recorded and subse
 
 *197
 
 quently introduced in evidence by the State. All of the officers who questioned appellant testified positively that the statements were free and voluntary and not induced by threats, fear, duress or promises of any sort.
 

 Appellant admits, in his testimony (taken out of the presence of the jury), that he received oral information of his constitutional rights on November 26 from Detectives Merolla and Burns and also acknowledges that he signed both of the written waivers which were introduced in evidence. However, he declares that he was beaten at various times by Detectives Merolla, Burns and Nichols and asserts that Mr. Houston, the polygraph operator, told him that since he was a juvenile he would not be punished if he could clear up some of the robbery cases still unsolved by the detectives. In speaking of his physical mistreatment, he states that it first happened on November 24 when Officer Nichols “ * * * swung at me and I ducked and drawed back and hit him in the jaw.” He declares that the officers hit him in the groin and “busted” his eye with a blackjack.
 

 Defense counsel sought to corroborate appellant’s testimony by the evidence of Dr. Thompson, Assistant Coroner of Caddo Parish, who was called on behalf of appellant. But Dr. Thompson, while testifying that appellant complained of passing blood in his urine and he prescribed medication for this ailment on several occasions, stated that the first date of treatment was March 1, 1969, over three months after the beatings allegedly occurred. He further declared that neither he nor the deputy sheriffs had any complaint from appellant prior to that time. And he further asserted that appellant’s complaint of blood in his urine is not consistent with his claim that he was struck in the back by the officers. Rather, the doctor says it is more likely the condition results from venereal disease.
 

 The trial judge was not impressed with appellant’s testimony that he was beaten by. the officers. For, after hearing the testimony, he expressed the opinion that the confessions were free and voluntary and that there were adequate warnings given by the officers of appellant’s constitutional rights.
 

 We agree. Indeed, defense counsel in his argument here does not seriously contend that appellant was beaten in the manner he says or otherwise physically mistreated. Counsel’s principal contention is that, considering appellant’s age, and the fact that he was in isolated confinement in small quarters (a room 8x12 ft.) and interrogated by the officers in the detective’s conference room more than once before he confessed, the State has failed to carry the burden of proving that appellant’s statements were free and voluntary. And counsel also indicates that, under the totality of the circumstances here shown, the' officers
 
 *199
 
 violated appellant’s constitutional rights by-interviewing him after appellant initially told them he did not desire to talk to them.
 

 We cannot sustain this argument. Appellant was not held incommunicado; nor are we able to discern anything wrong with the size of the room in which he was confined or the conference room in which he was interviewed. Appellant admits in his testimony that he telephoned his mother on the day of arrest, and there can be no doubt that he was fully advised of his rights. There is no showing that he was denied access to his family or that he could not have had an attorney to advise him if he had so desired. But he at no time indicated that he wished legal advice. Although he was young, an examination of his testimony exhibits that he was intelligent and precise as to time and dates, and we believe he was fully cognizant of all constitutional rights the law accorded him.
 

 A review of the evidence convinces us that appellant’s confessions were not in anywise induced by threats, promises or physical or mental coercion.
 

 Specification of Error No. 3 pertains to Bill of Exceptions No. 16, which was taken when appellant’s request for a full trial transcript of the proceedings was refused. It is claimed that this was error inasmuch as it constituted a denial of appellant’s constitutional rights under Griffin v. Illinois, 351 U.S. 12,
 
 76
 
 S.Ct. 585, 100 L.Ed. 891 (1956), since appellant is an indigent without funds for payment of a full transcript and such a transcript is essential for review of his appeal in this Court.
 

 We find no merit in the bill. In the recent case of State v. Anderson, 254 La. 1107, 229 So.2d 329 (1969), in dealing with a similar contention, we said:
 

 “In Louisiana, an appeal in a criminal case is only on questions of law. The Supreme Court is without jurisdiction to review the facts. Art. VII, Sect. 10, La. Const. Here the evidence attached to the Bills of Exceptions provides a full base for appellate review. No verbatim transcript is required, nor would this court review it if it had been transmitted. State v. Mack, 243 La. 369, 144 So.2d 363; Mack v. Walker, 5 Cir., 372 F.2d 170.”
 

 Albeit appellant in this case filed a motion for a directed verdict which would, in many jurisdictions, entitle him to a full transcript for consideration of the evidence on appeal, this cannot apply to appeals in felony cases in Louisiana where the jury is the sole judge of the facts pertaining to guilt or innocence. It is because of a clear constitutional ordinance thus providing (La.Cons. Art. XIX, Sec. 9) that this Court felt obligated to hold in State v. Hudson, 253 La. 992, 221 So.2d 484, that Article 778 C.Cr.P., prescribing that the
 
 *201
 
 trial judge may direct a verdict of not guilty in a jury trial, is violative of our fundamental law.
 

 The conviction and sentence are affirmed.
 

 [1]
 

 . Although defense counsel has not, either in brief or oral argument; referred to Bills Nos. 2, 4, 7 and 14 reserved below, we do not regard those bills as abandoned since appellant, an indigent, has been represented throughout the proceedings by court-appointed attorneys. We have considered the bills and find they are not meritorious.
 

 Bill No. 2 was taken to the overruling of a challenge for cause of a prospective juror on the ground that lie admittedly was a friend of one of the police officers who was to testify for the prosecution. The judge declares in his per curiam that the juror was questioned extensively and stated that he could judge the case impartially.
 

 Bill No. 4 was taken when objection was made (and overruled) to a State witness reading from a “Miranda” warning card on the ground that it was not the same card which was subsequently read to appellant just prior to the time ho gave his confession. However, as the judge states in his per curiam that the warning on the card was the same as that on the card which the witness read to appellant, the objection was without basis.
 

 Bill No. 7 was taken when the court refused the request of defense counsel for the prosecution to supply them with a statement given to the police by James Moore, Jr., an accomplice in the crime, who testified for the State, so that this statement could be used for their cross-examination of the witness. The refusal was proper. It is well settled that oyer of a prior statement to police by a State witness for use in cross-examination for impeachment purposes will not be required unless the accused first shows that the witness has made one or more material assertions therein which are contrary to his sworn testimony on the stand. State v. Martin, 250 La. 705, 198 So.2d 897, and cases there cited.
 

 Bill No. 14 was taken to the refusal of a motion for a new trial based upon the allegation of newly discovered evidence in that Floyd Craig, the victim of the robbery, was now inclined to testify that one of the men who robbed him was James Moore, Jr., and also on the ground that the verdict was contrary to the law and evidence. The latter complaint presents nothing for review. The claim of newly discovered evidence was found insufficient by the judge for granting a new trial because it is not alleged in the motion that Floyd Craig would not testify that appellant was not one of the men
 
 *191
 
 who robbed Mm. The motion was properly overruled.
 

 [2]
 

 . He was originally charged with armed robbery but later pleaded guilty to the offense of receiving stolen goods.
 

 [3]
 

 . Appellant was 17 years of age. Reliford’s age is not shown by the record, but we assume he was about appellant’s age as both were A.W.O.L. inmates of the Juvenile Training Center at Scotlandville, Louisiana.
 

 [4]
 

 . Appellant says in Ms testimony that he was absent without leave from the Juvenile Training Center, that is, he had been allowed home on leave and failed to return.