245 So.2d 707

**STATE of Louisiana**

**v.**

**Freddie HOLMES.**

No. 50674.

Feb. 24, 1971.

Rehearing Denied March 29, 1971.

Dennis R. Whalen, Frank J. Polozola, Seale, Smith, Baine & Phelps, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.

HAMLIN, Justice:

· Defendant appeals from his conviction of the crime of murder, LSA–R.S. 14:30, and his sentence to life imprisonment in the Louisiana State Penitentiary.

Bills of Exceptions Nos. 16, 20, 21 and 22, reserved during the course of trial, are presented for our consideration. The remaining bills of exceptions reserved during the proceedings are abandoned.

## BILL OF EXCEPTIONS NO. 16.

Bill of Exceptions No. 16 was reserved when the trial court overruled defense counsel's objection to the introduction in evidence of a document entitled, "Autopsy Report."

The facts attached to this bill disclose that on the evening of September 2, 1967, defendant went into the yard of the victim, Robert Collins. After a scuffle with Collins, defendant left the premises. After suffering weakness and convulsions, Collins was taken to the hospital; hospital treatment consisted of the stitching of a neck cut and the application of a bandaid thereto, and he was sent home in an ambulance. The next morning he became very ill and was again taken to the hospital where he died shortly after arrival. After his death, the Coroner wrote a document entitled "Autopsy Report"; it recites:

"Autopsy Report

Baton Rouge, Louisiana
East Baton Rouge Parish
September 3, 1967

"I, Chester A. Williams, Jr., M.D. of the Parish of East Baton Rouge, having been notified by Our Lady of Lake Hospital of the death of Robert Collins and having answered said notification, state that this was body of 42 year old Colored male Stab wound entry just superior to head left clavicle (sutured) going down through sternum and backward into left carotid at arch aorta. Massive hemorrhage into mediastium with pressure on trachea and cereberal anoxia. 12:15 P.M. 9–3–67 Stab laceration left carotid at arch of aorta

"[Sgd.] C. A. Williams
"Coroner."

LSA–C.Cr.P. Art. 105 provides:

"In a case involving the apparent commission of a crime, the coroner shall make a written report of his investigation to the district attorney within ten days after the completion thereof. In homicide cases the coroner's report shall certify the cause of death.

"The report shall be in addition to the procés verbal of an autopsy required by R.S. 33:1565.[1]

"A coroner's report and a procés verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact."

Prior to trial, the State subpoenaed the Coroner as a witness; it did not call him during trial, but it offered in evidence the "Autopsy Report" supra. Immediately thereafter, defense counsel had an instanter subpoena directed to the Coroner; it was served on an office employee because of Dr. Williams' (the Coroner) absence from the City of Baton Rouge. Not being able to secure the presence of the Coroner, defense counsel offered strenuous objection when the trial judge permitted the trial to progress and the "Autopsy Report" to be offered in evidence for the jury's consideration.

In this Court defense counsel contends:

"Under Article 105, there are two documents that 'shall' be prepared by the coroner, namely, a 'coroner's report' and a 'proces verbal of an autopsy'. Article 105 further provides that *both* the coroner's report *and* the proces verbal of an autopsy shall be introduced into evidence to prove the death and the cause of death. The State failed to comply with Article 105 since it did not introduce the coroner's report *and* the proces verbal.

"The language in Article 105 is clear and unambiguous. It is also clear that the intent of the drafters of the Code was that both the coroner's report and the proces verbal must be introduced to prove the cause of death. Article 105 of the

---

1. "The parish coroner, or any person acting in that capacity and conducting a post mortem examination, shall within thirty days furnish the procés verbal of the proceedings of the post mortem examination, to the clerk of the parish court for filing. Where the facilities permit, all such records may be kept in the coroner's office. The clerk, except in Orleans Parish, shall keep a suitable book which shall be known as the book of autopsies, to be opened to the public at any time during office hours for inspection, in which shall be inscribed the proces verbals of the proceedings of the post mortem examinations. Noncompliance by the clerk shall subject him to a fine of not less than twenty-five dollars, collectible by the district attorney or the attorney representing the parish, by suit before any justice of the peace of the parish, and when collected shall be paid over to the parish school fund, less the cost of prosecuting the fine. For each proces verbal recorded, the clerk shall receive from the parish treasury the sum of two dollars and fifty cents, payable upon his own warrant." LSA–R.S. 33:1565.

present Code had as its source R.S. 15:35 of the old Code of Criminal Procedure. Section 35 of the old Code provided:

" 'Upon the trial of the case, the proces verbal of the inquest shall be competent evidence of death and the cause therefor, but not of any other fact.'[2]

"Thus, under the old Code, only one document, namely the proces verbal was required to be introduced. If the drafters of the new Code would have intended that only one document would be required to be introduced, there [they] would have used the same language as Section 35 of the old Code. Instead, the drafters changed the language of the section and provided clearly and succinctly that a 'coroner's report and a proces verbal of an autopsy' shall be competent evidence of death and the cause thereof. Furthermore, Article 105 describes both of the documents to be introduced as being separate documents. It is submitted that there would have been no need to describe both documents and to state that both shall be introduced if the drafters of the new Code intended that only one was required.

"Since the State of Louisiana failed to comply with Article 105, the Trial Court erred in allowing the introduction of the single document, whatever it may have been entitled, and such error was clearly prejudicial to the rights of the defendant."

The Official Revision Comment (a) under Art. 105, LSA–C.Cr.P., supra, recites:

"One purpose of this article is to provide the flow of information needed by the office of the district attorney in cases of apparent homicide and other apparent crimes involving medical evidence. Under R.S. 33:1561 the coroner has a wide variety of cases to investigate. Many of the investigations are routine and do not involve the commission of crime. To require the coroner to send reports of those investigations would impose a needless administrative burden upon both the coroner and the district attorney. Hence, this article requires the submission of reports to the office of the district attorney only in cases where a crime apparently has been committed."

2. LSA–R.S. 15:35, source of Art. 105 of the Code of Criminal Procedure, provided, in part:

" * * * The coroner shall also within thirty days from the inquest return to the district court the procès verbal of the inquest, the written evidence and all recognizance and examination by him taken, and may commit to the parish jail any witness who refuses to recognize in such manner as he shall direct. Upon the trial of the case the procès verbal of the inquest shall be competent evidence of death and the cause thereof, but not of any other fact. If no inquest was held, the coroner may certify the fact of a death and the cause therefor, and said certificate shall be competent evidence of these facts, but not of any other fact."

◼

◼ The "Autopsy Report" herein was sent to the District Attorney only as evidence of the death of Robert Collins and the cause thereof. "The proof of the death or cause of death by certificate is not proof of guilt or innocence. They do not implicate the accused. It is rem ipsam evidence." Syllabus by the Court, State v. Hopkins, 118 La. 99, 42 So. 660. See, State v. Winey, 216 La. 560, 44 So.2d 115; State v. Leming, 217 La. 257, 46 So.2d 262. A grand jury indicted the defendant herein, and a petit jury determined his guilt.

The Coroner's testimony was not needed to prove the death of Robert Collins or the cause thereof. In State v. Hayden, 171 La. 495, 131 So. 575 (1930), this Court stated:

"There is no law to be found anywhere which declares that the corpus delicti cannot be proved otherwise than by oral testimony from the lips of witnesses, and it would be a strange doctrine to hold that the introduction of documentary evidence to prove the corpus delicti was a violation of the constitutional right of an accused to be confronted with the witnesses against him. The procés verbal, or, for that matter, any other documentary evidence, can in no sense be said to be a witness within the meaning of the constitutional article referred to.

"In view of the long line of uniform jurisprudence holding that the procés verbal of a coroner's inquest is admissible to prove the corpus delicti, the mere physical facts of the death and cause of the death, which do not pertain to the guilt or innocence of the accused, we find no sound reason for overruling that jurisprudence and of holding under the constitutional provision the corpus delicti, the fact and cause of death, cannot be proved except by witnesses confronting the accused face to face."

◼ We do not find that under Art. 105, LSA–C.Cr.P., supra, the State is under a mandatory duty to produce at trial the procés verbal of the Coroner, which LSA–R.S. 33:1565, supra, states must be sent to the Clerk of Court—not the District Attorney—for filing. Art. 105 directs that in a case such as the instant one, the Coroner shall make a written report of his investigation to the District Attorney, and that such report shall be in addition to his procés verbal. Both the procés verbal and the "Autopsy Report" shall be competent evidence if both are offered in evidence at trial, but both are not required to be offered in evidence at trial. We therefore find that by offering only the "Autopsy Report" in evidence at the trial of the defendant, the State complied with

Art. 105, and that the defendant suffered no prejudice.[3]

Bill of Exceptions No. 16 is without merit.

## BILLS OF EXCEPTIONS NOS. 20 AND 21.

Bills of Exceptions Nos. 20 and 21 were reserved when the trial court denied de-

fense counsel's motions for directed verdicts as to the charge of murder and as to the responsive verdict of manslaughter.

At the time of reserving his bills, counsel for the defendant contended that the State had failed to prove its case beyond a reasonable doubt, that is, under the terms of Art. 778, LSA–C.Cr.P.[4] Herein, counsel contends:

3. The record shows that the following colloquy took place in connection with the reservation of Bill of Exceptions No. 16:

"MR. ROY: May it please the Court, at this time the State would like to offer the report and proces verbal of the coroner with reference to the death and cause thereof. I'd like to ask permission to substitute a copy for it. It's the original.

"THE COURT: All right.

"MR. WHALEN: We have an objection to this document. We ask that the jury be retired while we argue it.

"THE COURT: All right, retire the jury, Mr. Sheriff.

"(Jury retired to the jury room.)

"MR. WHALEN: We object to this, Your Honor, as not being an official document, not qualifying under the provisions of Article 105 as to what may be admitted to prove death. Further
\* \* \*

"THE COURT: Is that 15:105?

"MR. WHALEN: No, sir, that's 105 of the Code of Criminal Procedure, of the new Code. Particularly, in that, that Code specifies there shall be a proces verbal of an autopsy and a coroner's report, and that the two shall be competent evidence. We have here a piece of paper that says autopsy report, doesn't say it's a proces verbal and doesn't say it's a coroner's report, does not identify the signer if it does identify him as the coroner. Of course, Your Honor can take judicial notice of his signature. That is not our objection. Our objection is that this is neither a coroner's report

nor a proces verbal. It attempts to be both, but the law specifies the two shall be separate.

"MR. ROY: Well, Your Honor, I have some other documents I'll be happy to submit. I was just trying—there are some facts in one of them that I don't think should go before the jury, but
\* \* \*

"MR. WHALEN: We further object, Your Honor, on the grounds that this is hearsay and does not subject the doctor to cross-examination. It is an officer of the State or Parish exparte his testimony not subject to cross-examination as admitted against the defendant."

4. "In a jury trial the court may direct a verdict of not guilty of one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.

"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.

"If the court denies a defendant's motion for a directed verdict or judgment of acquittal at the close of the state's case, the defendant may offer his evidence in defense." LSA–C.Cr.P., Art. 778.

(The first paragraph of this Article has been declared unconstitutional in State v. Hudson, 253 La. 992, 221 So.2d 484, 499.)

"At the conclusion of the State's case, the defendant moved for a directed verdict on both the charge of murder and manslaughter. This motion for a directed verdict is based on a legal question and not on the facts involved in the case. Since the State failed to comply with Article 105 of the Louisiana Code of Criminal Procedure, the State failed as a matter of law to prove the cause of death of the decedent. If the cause of death has not been established, the Court must, as a matter of law, grant defendant's motion for a directed verdict on both the charge of murder and manslaughter. Article 778, Louisiana Criminal Code of Procedure."

 We find that Bills of Exceptions Nos. 20 and 21 are without merit because of our finding with respect to Bill of Exceptions No. 16. The "Autopsy Report" was found to be admissible in evidence under Art. 105, LSA–C.Cr.P.; therefore, once proof of the corpus delicti was submitted to the jury, the guilt or innocence of the defendant of the crime charged was a matter for the jury's determination. In its deliberations, proof beyond a reasonable doubt was a factor exclusively for its consideration.[5]

Bills of Exceptions Nos. 20 and 21 are without merit.

## BILL OF EXCEPTIONS NO. 22.

Bill of Exceptions No. 22 was reserved when the trial judge denied defense counsel's motion for a continuance based on the ground of the absence of a material witness, Dr. Chester Williams, Coroner, who had been subpoenaed.

The motion for a continuance was verbal; the facts relative to its reservation are recited in our consideration of Bill of

5. "This legislative enactment [Art. 778, LSA–C.Cr.P.] is repugnant to the constitutional guarantee that, 'The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge.' La.Const. art. XIX, Sec. 9 (1921); State v. Gatlin, 241 La. 321, 129 So.2d 4 (1961); State v. Broussard, 217 La. 90, 46 So.2d 48 (1950). Questions of guilt or innocence can only be decided by the jury under the plain language of the Constitution. Judges must decide only those fact questions which do not relate directly to guilt or innocence. State v. Hayes, 162 La. 917, 111 So. 327 (1927).

"The right to trial by jury in a capital case is as old as the State itself. La. Const. art. VI, Sec. 18 (1812). Power to determine guilt or innocence in capital cases has not been vested in judges by the Constitution; instead the people have reserved that power to juries. When the death penalty is involved the guarantee of the Constitution is twofold: The accused is assured a jury trial in his contention for acquittal, and the State is assured a jury trial in its contention for a conviction. In these trials the jury is the repository of the standard of justice in the community." State v. Hudson, 253 La. 992, 221 So.2d 484, 499. See, State v. Douglas, 256 La. 186, 235 So.2d 563.

Exceptions No. 16, supra. Herein, defense counsel contends:

"* * * The failure of the Court to allow a short recess or continuance of this case to allow the defendant to call the coroner as a witness was an abuse of his discretion and was prejudicial to the defendant. The Court's attention is directed to page 280 of the record which shows that it was 3:15 P.M. when the motion for a continuance was made. Since Court had been in session almost an entire day, it would not have caused any hardship or unreasonable delay to recess Court until the next morning to allow the Coroner to testify. Article 707–708 Louisiana Code of Criminal Procedure."

Our disposition of Bill of Exceptions No. 16 applies to the instant bill. The Coroner's testimony was not required to prove death or the cause thereof. Confrontation was not mandatory. The trial judge did not abuse his discretion in not granting a continuance or a short recess during trial. Cf. Arts. 707, 708, 709, LSA–C.Cr.P.

Bill of Exceptions No. 22 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, Justice (dissenting).

The defendant has been convicted of murder. He has complained under a number of bills of exception of the failure of the coroner to respond to the State's subpoena or to his subpoena instanter, of the failure of the court to grant him a recess until he could secure the coroner's presence, and finally of the failure of the trial court to direct a verdict of acquittal because the State had failed to prove an essential ingredient of the crime—that is, the cause of death of the person whom the defendant was accused of murdering. I am of the opinion there is merit in the pertinent bills of exception, Nos. 20, 21, and 22.

The only evidence presented as to the cause of death in the entire proceedings follows:

"Autopsy Report

Baton Rouge, Louisiana
East Baton Rouge Parish
September 3, 1967

"I, Chester A. Williams, Jr., M.D. of the Parish of East Baton Rouge, having been notified by Our Lady of Lake Hospital of the death of Robert Collins and having answered said notification, state that this was body of 42 year old Colored male Stab wound entry just superior to head left clavicle (sutured) going down through sternum and backward into left carotid at arch aorta. Massive hemorrhage into mediastium with pressure on trachea and

cerebral anoxia. 12:15 P.M. 9-3-67 Stab laceration left carotid at arch of aorta

"[sgd] C. A. Williams
"Coroner."

It is my opinion that this does not establish that Robert Collins died as a result of a stab wound.

This court in State v. Hudson, 253 La. 992, 221 So.2d 484, on its own motion attempted to declare unconstitutional the directed verdict statute, Code of Criminal Procedure Article 778. I will not repeat all the reasons assigned in my dissent in that case, but I am of the opinion that the court could not and did not (except in dictum) pass upon the constitutionality of this article. The issue was not before the court, and the matter, not being jurisdictional, could not have been noted ex proprio motu.

When the State completed its evidence in the present case, an essential ingredient of the crime of murder, the cause of death, had not been established. It was an affirmative obligation of the State to prove the cause of death, and the defendant was entitled to have the judge acquit him at that point because the State had failed to come forward with that proof. I am of the opinion that the directed verdict should have been entered for the defendant, and that we should now order him discharged.

Realizing that a majority of the court are unlikely to recant so recent a pronouncement as that made in Hudson, I then further dissent, being of the view that the defendant is at least entitled to a new trial because of the arbitrary refusal of the judge to grant a recess in order to receive the testimony of a vital witness who had been not only subpoenaed (receiving actual service) by the State but whose attendance defense counsel also sought by instanter subpoena. A reading of the testimony attached makes it apparent that a principal defense in this case was that the cause of death was not attributable to a stab wound. The surface evidence of the stab wound must have been minor, for after treatment by a physician on the day of the occurrence, it was sutured and covered with a bandaid. The victim returned home. He was brought back to the hospital on the following day because of convulsions and died at the hospital. Defendant would apparently contend that the victim died of a heart attack not associated with the stab wound.

None of the cases cited by the majority are apposite to this situation, where conviction or acquittal in this capital case rests upon proof of cause of death, and the evidence offered to establish this consists of one written paragraph which states only the location of a sutured wound and the finding of a laceration of an artery in a dead man. The so-called "autopsy report" signed by the coroner and quoted above is simply a report of the physio-

logical findings of a post-mortem examination. It is not the coroner's report required under Code of Criminal Procedure Article 105 which "shall certify the cause of death". In short, these physiological findings do not, in and of themselves, establish the cause of death. I would concede the likelihood that the laceration of the left carotid at the arch of the aorta would produce death, but the State is charged with a greater burden than merely establishing the wounds; it must establish that these wounds caused death. The record is devoid of this proof.

I am of the opinion that the defendant should be discharged under his bills of exception reserved when the trial court refused to enter a directed verdict. Alternatively, I am of the opinion that this matter should be remanded for a new trial under the bill of exception which complains of the failure of the trial judge to grant a recess in order to obtain an essential witness who ignored the State's subpoena and whose attendance the defendant was not able to secure by instanter process. I respectfully dissent.

TATE, Justice (dissenting).

Simple fairness requires a reversal; at the very least, for a remand for re-trial. No medical evidence was introduced to show that the victim died because of any action by the defendant. The defendant was denied his right of confrontation with and cross-examination of the parish coroner, the only medical witness who had possibly exculpating knowledge.

The sole evidence, aside from the coroner's written autopsy report, was lay testimony as follows: The defendant Holmes and the victim Collins fought about ten p. m. on Saturday night. Before they were separated, Holmes had stabbed Collins in the neck with a penknife.

Collins went to the hospital, where the slight cut was stitched up and a band-aid placed on it. He was discharged and returned home. Next morning about 10:30 he suffered "convulsions", according to his wife, and he was taken to the hospital, where he died just after noon.

According to the lay testimony, Collins had a very bad heart condition for about eight years prior to the fight. *There is no medical or other evidence* (the autopsy report possibly excepted) *to show that the penknife cut of Saturday night contributed to Collins' death*. This was after his discharge from the hospital and return home, when he suffered convulsions and died, some fourteen hours later after the penknife cut.

Now, let us look at this autopsy report. The substance of it is only that the coroner states he saw the body of a 42-year-old colored male with a stab wound. It does not indicate, for instance, whether the wound was one made by a penknife, nor

whether, if so, the wound was of a type that could result in death 14 hours later instead of immediately. I doubt the laymen on the jury could deduce from the technical medical terminology of the report any factual or opinion evidence comprehensibly related to the crucial issue of medical causation.

It is obvious that, under the circumstances of the delayed death (following an initial discharge for a presumably minor cut) and the prior history of heart trouble, that the medical cause of death is the principal issue in this prosecution for murder (which carried a death penalty if the jury so decided). It was obvious also to all counsel before trial.

The record shows that the state had subpoenaed the coroner, Dr. Williams, a week before the trial. Although the counsel for the indigent defendant as a precaution might have subpoenaed this official also, I feel he was justified in assuming that such presumably unbiased public official would be available to testify and to explain the probabilities (or improbabilities) that the penknife cut fourteen hours earlier had contributed to the death.

The defendant counsel learned at the trial when the autopsy report was introduced, for the first time, that the state was going to rely upon this rather than upon the coroner's live testimony (subject to cross-examination) to prove the cause of death. The defendant immediately subpoenaed the coroner, and, on learning he was at a convention in Shreveport, asked for a recess until the following morning (Saturday), it then being 3:15 p. m. Friday.

By appropriate bills of exceptions, the defendant reserved his right to question on appeal his conviction because (1) the autopsy report was introduced, without the proces verbal (*both* being required by Article 105, La.Code Crim.P.), (2) the state's case did not contain any evidence proving that the penknife stab had caused or contributed to the death, and (3) the trial court did not grant him a recess to secure the coroner's testimony on this essential issue.

In my opinion, probably all three complaints are justified on purely legal grounds. What I most object to, however, is the essential unfairness, the tricksmanship, in failing to produce medical evidence, when the crucial issue is a close case of medical causation, in the prosecution of a man on trial for his life. Under the circumstances, our trial brother abused his discretion in failing to recess the trial until the next morning to permit the defendant to produce this testimony, the availability of which to him had been unfairly denied.

I respectfully dissent from the affirmance of this conviction.

*On Application for Rehearing*

Rehearing denied.

BARHAM and TATE, JJ., are of the opinion a rehearing should be granted and assign written reasons.

TATE, Justice (dissenting).

I note an additional reason why the autopsy report was improperly admitted, since no continuance was given to make the coroner subject to cross-examination on the substance of this ex parte statement.

The Confrontation Clauses of the federal constitution, contained in the Sixth Amendment, and of our state constitution, Article I, Section 9, guarantee to the accused in criminal prosecutions the right to be confronted with the witnesses against him. The defendant's objections to the admission of the autopsy report and to the denial of a continuance were in part grounded on the denial to him of his rights of cross-examination and confrontation, urged also as a denial of due process. See Bills of Exceptions Nos. 16 and 22, incorporating objections urged at Tr. 329, 331, and 347.

While this ground for reversal was not briefed before this court, nevertheless the bills perfected, the objections made to the trial court, and the type of prejudice complained of squarely present this court with the question.

The right of confrontation is designed, inter alia, to afford the accused the right to cross-examination and to jury-evaluation of the credibility of opposing witnessses. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). More important, perhaps, it was designed to end the abuse of conviction by ex parte out-of-court affidavit or statement. California v. Green at 90 S.Ct. 1934–1935; Note, Right to Confrontation, 113 U. of Pa.L.Rev. 741, 742–43 (1965).

This instance presents a classic case of the (mis)use of an ex parte governmental report to convict an accused, in direct violation of the Confrontation Clauses of the state and federal constitutions.

For this reason, in addition to those previously set forth, I respectfully dissent from the denial of a rehearing. I am authorized to state that BARHAM J., joins in this dissent.