THE STATE, M. DE MOTTE VREELAND ET AL., PROSE-CUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. Statutes conferring the power of condemnation under the right of eminent domain are strictly construed. Every condition prescribed in the grant must be complied with, and the proceedings must be conducted in the manner and with the formalities prescribed in the grant of power. Formalities and modes of procedure prescribed are of the essence of the grant, which the courts cannot disregard on a conception that they are not essential.

2. The act of March 24th, 1885, entitled "An act to enable cities to build main sewers in certain districts, and to acquire private lands for that purpose" (*Rev. Sup., p.* 580), is a general law in force in all the cities of this state, and purports to deal with the entire subject of the drainage of a neighborhood as distinguished from local sewerage, and operates to supersede special provisions in city charters on the same subject, except so far as their provisions are retained or adopted by the act.

3. The act provides that the proceedings for acquiring lands for the construction of sewers constructed under that act should conform to the proceedings now provided by law for the acquiring of land for the

opening of streets in such cities. *Held*, that in proceedings to condemn lands for a sewer to be constructed under the act in any city, the special provisions in its city charter for acquiring land for a street, whatever they may be, must be complied with.

On *certiorari* to remove proceedings for constructing a sewer.

Argued at June Term, 1891, before Justices DEPUE, DIXON and REED.

For the plaintiff in *certiorari*, *James Flemming.*

*Contra, William D. Edwards.*

The opinion of the court was delivered by

DEPUE, J.   This writ of *certiorari* brings up the award of commissioners of assessments made to the owners of lands to be taken for the construction of a main sewer in Jersey City, beginning in Ocean avenue, and extending through Stegman street, Garfield avenue, Richmond street, and thence to tide water in New York bay.

The land proposed to be taken for the construction of the sewer is a strip twenty-five feet in width in Stegman street, from Ocean avenue to Garfield avenue, and fifty feet wide from Garfield avenue to New York bay.

The construction of this sewer was projected under the act of March 24th, 1885. *Rev. Sup., p.* 580. The act is entitled "An act to enable cities to build main sewers in certain districts, and to acquire private lands for that purpose." The first section enacts: " That when, in a city, any neighborhood of said city lacks sewers for the proper drainage thereof, and the protection of the health of the inhabitants thereof, and there are no public streets through which it is feasible and advantageous to the city to build a main sewer from such neighborhood to tide water or other waters, into which the sewerage of such city is emptied, then it shall be lawful for the board or other authority of such city having charge of

the construction of sewers, to lay out and construct a main ·sewer or sewers, sufficient for the proper drainage of such neighborhood, through and upon any lands in such city that may be in the line of such sewer or sewers located as herein-after provided."

The second section prescribes the condition under which the municipal authorities are required to act in the premises. It enacts: "That any fifty owners of land lying within such neighborhood may present to the said board an application in writing, designating the neighborhood lacking proper drain-age, and setting forth the particulars bringing such neighbor-hood within the meaning of the first section of this act, and praying that a main sewer or sewers be constructed for the use of said neighborhood; the said board shall thereupon proceed to act upon said application in the same manner as is now provided by law for proceedings to construct sewers in such city; and if such board determine to construct the sewer ·or sewers applied for, they may locate the same either wholly upon private lands, or partly in streets and partly upon pri-vate lands, as the nature of the case may require."

The act of 1885 is a general law in force in all the cities ·of this state. By a canon of construction this statute oper-ated by force of a constitutional requirement to supersede and repeal all special and local laws contained in city charters on the subject within its purview inconsistent with its provisions. *Bowyer* v. *Camden,* 21 *Vroom* 87 ; *Haynes* v. *Cape May,* 23 *Id.* 180. The subject embraced in this legislation is the ·drainage of a neighborhood as distinguished from local sewer-age, designed principally for the benefit of lands abutting on a sewer. The means by which the object is to be accom-plished is the construction of a main sewer "from such neighborhood to tide water, or other waters into which the sewerage of such city is emptied."

The charter of Jersey City provides that a sewer shall be constructed on the application of the owners of one-third of the property fronting on the improvement. The act of 1885 provides that any fifty owners of lands lying within the

neighborhood proposed to be drained may make the application, and that thereupon the municipal authorities "shall' proceed to act." The city charter in this respect must yield. The application presented to the board purported to be signed' by more than fifty owners of lands proposed to be drained,. and sets out all the jurisdictional facts required by the statute. It was sufficient to confer jurisdiction on the board.

The act also purports to deal with the entire subject of municipal action in this respect, and hence operates to supersede special provisions in city charters on the same subject, except so far as their provisions are retained or adopted by the act. *Roche* v. *Jersey City*, 11 *Vroom* 257 ; *Haynes* v. *Cape May*, 23 *Id.* 180. The only provision in the act adopting the special provisions of city charters necessary to be considered is that contained in section 5, which provides that the proceedings for acquiring lands for the construction of the sewer "shall conform to the proceedings now provided by law for the acquiring of land for the opening of streets in such cities."

The proceedings for acquiring land for the opening of streets in Jersey City are contained in section 41 of the city charter. *Pamph. L.* 1871, *pp.* 1113, 1114.

Statutes conferring the power of condemnation under the right of eminent domain are strictly construed. Every condition prescribed by the legislature in the grant must be complied with, and the proceedings to condemn must be conducted in the manner and with the formalities prescribed in the grant of power. Formalities and modes of procedure prescribed are of the essence of the grant, which the courts cannot disregard on a conception that they are not essential.

The initial proceeding in the condemnation of land for a street in Jersey City is the preparation of a map by a discreet and disinterested surveyor selected by the board, whose qualifications for the duty assigned are approved by the board. The duty of the surveyor is to prepare a map on which shall' be delineated the lands to be taken as well as the property to

be assessed for benefits, and which shall be made a public record.

The section cited also prescribes the manner in which the commissioners shall perform their duties. They are required to determine the property to be benefited by the improvement; to estimate the probable cost of the improvement, and make a preliminary assessment of the benefits derived by each lot delineated on the map, as well as to assess the value of the lands taken and the damages, and are required to report to the board the facts ascertained, and the appraisements, estimates, determinations and assessments by them made. The report being filed, the board is required, upon public notice, to hear and consider objections; and if, after such hearing, the board determine to make the improvement, it may be arrested if the owners of two-thirds of the property to be assessed for benefits shall remonstrate against the same being made. In these steps, in the course of the proceedings to take lands for a street, the owner has the advantage of a hearing before the board upon the facts authenticated by the commissioners' report, including the probable cost of the improvement, and the amount of indemnification to the city to be realized from the assessments for benefits. On a hearing of this character the board may be constrained, on public considerations, to abandon the improvement; and if the board proposes to go on with the improvement, it may still be defeated by the protest of owners of lands liable to assessment for benefits. In either of these events the condemnation proceedings would be terminated.

A map made by a surveyor chosen by the board, and a hearing before the board upon a report of the commissioners certifying officially to the probable cost of the improvement, and the assessments and apportionment of benefits, are by the charter made so essentially parts of the proceedings to take lands for a street, that proceedings to condemn, wanting these requisites in either respect, would be a nullity.

Nor are the provisions contained in this section of the city charter inappropriate to the scheme of improvement pro-

pounded by the act of 1885. Condemnation proceedings, to acquire lands for the purposes contemplated by the act, may be conducted without embarrassment and with advantage to the public without infringing upon any provision of that statute. Indeed, if that be not so, and land for the construction of main sewers in Jersey City cannot be taken in the manner and under the formalities prescribed by the city charter for taking lands for opening streets, the act would be incapable of execution in that city. The act provides no other mode for taking lands.

In this respect the proceedings under review are conspicuously defective. The application was presented to the board on the 28th of October, 1889 ; the resolution to build the sewer and condemn the lands described in the application was passed the same day. This resolution was approved by the board of aldermen November 12th, and by the mayor November 14th, and by the board of finance April 25th, 1890. The commissioners gave notice of their meeting on the 15th of May, 1890, to appraise the value of the land to be taken, and made their award on the 16th of June, 1890, containing simply an estimation and appraisement of the lands taken. There was no preliminary determination of the size or dimensions of the sewer proposed to be built, or of the materials proposed to be used ; no map prepared as required by the charter ; no ascertainment of costs ; no preliminary assessment of benefits, and no report by the commissioners of the facts ascertained by them, and of the appraisements, estimates, determinations and assessments made by them concerning the said improvement as required by the charter, on which the charter required objections to be heard. As a proceeding " provided by law for the acquiring of land for the opening of a street " in Jersey City, this proceeding would be utterly unavailing.

For this reason the award in this case must be set aside.