THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, PLAINTIFF IN ERROR, v. THE ESSEX COUNTY PARK COMMISSION, DEFENDANT IN ERROR.

Argued July 8, 1898—Decided July 8, 1898.

Section 2 of "A supplement to the act entitled 'An act to establish public parks in certain counties in this state and to regulate the same,' approved March 5th, 1895" (*Pamph. L.* 1898, *p.* 19), is not repealed by section 52 of "An act to regulate elections" (*Revision of* 1898). *Pamph. L.* 1898, *p.* 237.

---

On error to the Supreme Court.

For the plaintiff in error, *Halsey M. Barrett.*

For the defendant in error, *Robert H. McCarter.*

The opinion of the court was delivered by

GARRISON, J. The controversy in this case is between the Essex County Park Commission and the board of chosen freeholders of that county. The issue is presented by a demurrer filed by the former to the return made by the latter to an alternative writ of *mandamus.* The prayer of the re-

lators was for a *mandamus* to compel the board of chosen
freeholders to issue bonds to the amount of $500,000 to meet
the expenses incurred by the commission. The return of the
freeholders to the alternative writ set up the acceptance by the
voters of the county of a legislative provision upon which the
issue of the bonds depended, and after alleging that such
acceptance was by an election held under the Park Commis-
sion act, showed that by a later general act there had been a
revision of the laws concerning elections, and thereupon
charged that the latter act had superseded the former. The
Park act was approved February 21st, 1898 (*Pamph. L., p.*
19); the revision of the election laws was approved April
4th, 1898 (*Pamph. L., p.* 237). The election under the Park
act was held on April 12th, 1898. To this return the park
commission demurred and moved that it be quashed. The
issue, therefore, is whether the acceptance or rejection of the
supplement to the Park act was properly submitted to the
voters of the county at an election held in accordance with the
provisions of that act, or whether it should have been sub-
mitted under the provisions of the fifty-second section of the
General Election law. The ultimate question is, whether the
Park act, in so far as it prescribed a special mode for holding
elections for the acceptance of its supplements, was repealed
by the passage of the section of the revised election law hav-
ing for its object the regulation of " the submission of propo-
sitions " at any election.

The general doctrine upon this subject is in nowise in any
doubt, although it has been upon different occasions expressed
with varying shades of meaning. Behind all of the sub-
sidiary rules furnished by the decided cases is the fundamental
principle that the special feature of an earlier act is repealed
by a later general act only when such a legislative intent
appears. How it may appear is the distinguishing mark of
the cases. Various indications have been taken as affording
grounds for the discovery of the purpose to repeal. The
most common, perhaps, are repugnancy or inconsistence
between acts *in pari materia,* an intention to substitute the

new law for the old, and a purpose to' prescribe the only rule upon the subject.    Illustrations of each are to be found in the decided cases in our own state. *Morris and Essex Railroad Co.* v. *Commissioners*, 8 *Vroom* 228 ; *Industrial School* v. *Whitehead*, 2 *Beas.* 290 ; *Vreeland* v. *Jersey City*, 25 *Vroom* 49 ; *Mechanics' and Traders' Bank* v. *Bridges*, 1 *Id.* 112 ; *New Brunswick* v. *Williamson*, 15 *Id.* 165 ; *Brown* v. *Mullica Township*, 19 *Id.* 447.    The citations of cases elsewhere are collected in 23 *Am. & Eng. Encycl. L.* 492.

. Where the later and the earlier act have similar or even cognate objects the intention to modify or supersede finds a more ready acceptance.    Where, however, the two deal with subjects entirely foreign, the other to the other, so that the later act would, as it were, wrest an incidental feature of the earlier act from its previous setting, some more substantial support is demanded than is derived from the mere fact that such a thing is possible.    Some affirmative indication should appear.    The present case is an apt illustration of such a situation.    The General Election law, revised 1898, has for its object the regulation of that political function from which it takes its title.    The subject of voting upon "questions and propositions," which is contained in a section of a few lines, is rigidly limited to elections for candidates held with official ballots.    It fills out the provisions of a general election law. The early act, on the contrary, in nowise deals with the regulation of elections, but solely with a non-elective body—a commission whose duty is to obtain land for public parks and to financier the scheme.    Before public money shall be appropriated to this object a certain supplement to the Park act had to be accepted in a mode appropriate to this statutory object.    It is this prescribed mode of acceptance that is said to be repealed by implication by the revision of the General Election law.    The bare statement of the case prepares the mind to insist that some affirmative indication of such a purpose shall be shown—something more than that " there is no rule of law which prohibits it."

Where a statute of one purport is sought to be forced upon an alien enactment it should have affirmative justification.

In contrast with this manifest lack of any intention to repeal the acceptance feature of the Park act there are many indications that such a thing could not have been in the legislative mind. One instance will suffice, for its effect is controlling. To give to the General Election act the repealing force contended for would disfranchise from voting for the acceptance of the park legislation all the citizens of the county outside its cities. That this is the result of such a repeal appears by comparing the section of the Park act that permits ballots other than official ballots with the fifty-second section of the Election law that limits the ballot to such as are official. Hence as the Election act, section 85, provides that there shall be no official ballots in local elections except in those held in cities, and as the Park acceptance election is held on the day local elections are held, it is evident that the legislature either intended to disfranchise the rural voter or else did not intend to interfere with the special election provided for by the Park act.

This is but one of the many incongruities that would follow from the theory of repeal in this case, all of which tend to show how far from probable it is that the legislative purpose was to supersede the method of acceptance peculiar to the Park Commission act by the fifty-second section of the Election law.

It is not seen that any good would result from an elaboration or even an enumeration of the other circumstances that militate against the notion of substitutive legislation in this case. It is clear to us that no such purpose is apparent, and that the doctrine of repeal by implication does not apply.

The demurrer was properly overruled, and the judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, COLLINS, GARRISON, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH. 12.

*For reversal*—None.