69   143
a69   291

JAMES P. ROSS, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, AND THE ESSEX COUNTY PARK COMMISSION.

Argued January 10, 1903—Decided January 15, 1903.

1. Invalidity in the provision of "An act to establish public parks in certain counties in this state and to regulate the same," approved March 5th, 1895 (*Gen. Stat., p.* 2618), as to the appointment of the members of the board of commissioners therein authorized, will not render the statute invalid. In such a case the constitutional provision (article 7, section 2, paragraph 9) for the appointment of officers by the governor, with the advice and consent of the senate, is operative.

2. On *certiorari* to review the action of the board of chosen free-holders of a county, for the issue of bonds, under said act or its supplements, on the requisition of a park commission organized thereunder, this court cannot inquire into the title of the members of the commission. Being a *de facto* board, such title cannot collaterally be questioned.

On *certiorari.*

Before Justice COLLINS, at Chambers, by consent, under section 295 of the Practice act.

For the prosecutor, *Henry Young.*

For the chosen freeholders, *Joseph L. Munn.*

For the park commission, *Charles L. Corbin.*

COLLINS, J.    The writ in this cause removes a resolution adopted by the board of chosen freeholders of the county of Essex and approved by the county supervisor.    It was thereby determined and resolved to comply with a requisition of the Essex county park commission, made January 6th, 1903, upon said board of chosen freeholders, to borrow money, in the name and upon the credit of the county, by issuing bonds to meet the expenses to be incurred for the acquisition, development and improvement of parks and parkways by said commission.    The authorizing legislation is "An act to establish public parks in certain counties in this state and to regulate the same," approved March 5th, 1895 (*Gen. Stat., p.* 2618), and the supplements of February 21st, 1898 (*Pamph. L., p.* 19), and March 28th, 1902.    *Pamph. L., p.* 202.    The stipulation of the parties establishes that the original act and these two supplements were accepted by popular vote, according to their terms, and that the case falls within the conditions of the latest supplement.    An amendment of March 20th, 1899 (*Pamph. L., p.* 92), which was not required to be, and was not, submitted to the voters, has no bearing on the questions now raised.

The prosecutor attacks the resolution solely on the ground of unconstitutionality in the legislation above cited. It is stipulated that no notice of intention to apply for such legislation as local or special was published, and therefore, in order to be valid, it must be held to be general, for it clearly regulates the internal affairs of the counties affected; and such regulation, under the constitution, must, when possible, be by general laws. Generality in this instance is denied, on the claim that a basis of population is not legitimate in classifying counties when legislating as to public parks, and on the claim that counties coming, by increase of population, into the class selected will not have an opportunity of acceptance, because the submission to popular vote is directed to be made at the "next election." If considered general, its validity is challenged on the ground that the appointment of the authorized board of commissioners by a justice of the Supreme Court would be an exercise by a person belonging to one department of the government of a power properly belonging to one of the other departments—which is forbidden by the constitution.

This court, in 1898, decided that a *mandamus* would lie to compel the issue of bonds under the supplement of that year, to which the one of 1902 is parallel. This judgment was affirmed on writ of error. *Freeholders of Essex* v. *Park Commissioners,* 33 *Vroom* 376. This court has also dealt with, as valid, condemnations of land under the original act. *Rimback* v. *Essex Park Commission, Id.* 494. True, the question of constitutionality may not have been raised, in either case, by the parties. I judge that it was not, but the court, *ex mero motu,* could have raised it; and, as Mr. Justice Dixon, in the later case of *Renner* v. *Holmes,* 39 *Vroom* 192, remarks, the statutes "were sustained." It would seem only decorous that some contrary deliverance should come from the Court of Errors and Appeals before this court should assume that the judgment of that court was inconsiderate.

Against the objection of lack of generality I would have no difficulty in sustaining the legislation. Public parks, I

think, have such fair relation to populousness as to make the line of demarcation fixed by the legislature on that basis a proper one; and I fully accede to the suggestion in *Renner* v. *Holmes, ubi supra,* that the provision for submission to vote of the original act at the election next after its approval is merely directory. In the same line is the case of *Albright* v. *Sussex County Lake and Park Commission,* 39 *Vroom* 523. The act will be available in every county which shall acquire the prescribed population.

The other objection, if the recent decision of this court in *Schwarz* v. *Dover,* 39 *Vroom* 576, and a *dictum* in *Moreau* v. *Freeholders of Monmouth, Id.* 480, shall be approved by the court of last resort, would seem to be fatal—not necessarily to the entire statute of 1895, but to the method thereby prescribed for the appointment of the authorized officers.

I think that the provision for the appointment of such officers, in a particular way, even if itself invalid, did not render invalid the otherwise perfect statute. Such provision is fairly separable from the main scope of the law. If the method of appointment attempted be valid, well and good; if not, then no method was adopted. In that case the constitution itself is operative. By article 7, section 2 of that instrument, after provision for certain designated officers, it is, in paragraph 9, provided as follows:

"9. All other officers, whose appointments are not otherwise provided for by law, shall be nominated by the governor and appointed by him with the advice and consent of the senate; and shall hold their offices for the time prescribed by law."

I think that this provision was designed to extend to all offices to be created by statute. Had the Park Commission act been silent as to how the commissioners authorized should be appointed, I entertain no doubt that their appointment would have lain with the governor, on the senate's advice and consent. Such must be precisely the effect of an abortive attempt to provide for a different mode of appointment.

This being so, the principles governing the action of officers *de facto* must apply in this case. The decision of this court

in *Van Reypen* v. *Jersey City,* 19 *Vroom* 428, seems directly in point. There the contention was that the legislature had abrogated a previously existing method of appointing members of a city board, and had not constitutionally substituted any other method of appointment. This court held that the acts of the *de facto* board could not collaterally be questioned. In this state the doctrine of the validity for all purposes of the action of officers *de facto* is explicit, and is fully sustained by the court of last resort. *Brinkerhoff* v. *Jersey City,* 35 *Id.* 225.

It was not open to inquiry, in any way, by the board of chosen freeholders of the county of Essex, nor, except in a direct proceeding, by this court, how the members of the Essex county park commission were appointed. That commission is a *de facto* body, holding office under color of law. It has been entrusted with' bonds of the county of Essex to the extent of $4,000,000—a large part of which came under the express sanction of this court. It has been recognized as existent by the legislature in the cited act of 1902. Its requisition, therefore, on the board of chosen freeholders was valid, however infirm may be the title of its members.

The resolution under review is affirmed, with costs.