GEORGE W. METLAR, PLAINTIFF IN ERROR, v. MIDDLE-SEX AND SOMERSET TRACTION COMPANY, DEFEND-ANT IN ERROR.

Argued June 21, 1905—Decided March 12, 1906.

A trolley company holding under lease a strip of land thirteen feet in width upon which it had built and operated a street railway, sought to condemn an additional strip of land of less width than forty-seven feet lying alongside of the thirteen-foot strip, the new strip to be used in connection with the already existing road. *Held*, that there existed no power to condemn the additional ribbon of land under the provisions of section 13 of the act of

1893 (*Gen. Stat., p.* 3239), as this land was not to be used either as an extension of the line of an existing railroad or a new line not exceeding sixty feet in width.

On error to the Supreme Court.

For the plaintiff in error, *Alan H. Strong.*

For the defendant in error, *Willard P. Voorhees.*

The opinion of the court was delivered by

REED, J.   This writ brings up a judgment of the Supreme Court affirming an order made by a justice of the Supreme Court appointing commissioners to condemn land belonging to the plaintiff in error.   The facts are these:   George W. Metlar, the plaintiff in error, in October, 1897, made a lease for ninety-nine years to a trolley company known as the New Brunswick Traction Company, of a ribbon of land thirteen feet in width.   The strip of land so leased adjoined a public road leading from New Brunswick to Bound Brook.   Upon this strip of land the New Brunswick Traction Company constructed and operated a line of single-track street railroad, with switches and turnouts.

The New Brunswick Traction Company, under the provisions of the act of 1893 (*Pamph. L., p.* 292; *Gen. Stat., p.* 3232), afterward consolidated with two other companies, forming a new company under the name of the Middlesex and Somerset Traction Company, the defendant in error.   Since such consolidation the new company has operated the road built by the New Brunswick Traction Company upon the thirteen-foot wide strip of land.

On April 7th, 1903, upon application of the new company, this order was made appointing commissioners to condemn an additional strip of land belonging to Metlar.   This additional strip lies alongside of and adjoins, for most of the way, the thirteen-foot strip already leased.   At no point, however, does the width of the strip sought to be condemned,

together with the thirteen feet already leased, exceed sixty feet.

The plaintiff in error challenges the right of the company to take this strip of land by condemnation. He denies that there exists any statutory provision authorizing its appropriation in this manner.

The only authority invoked by the corporation is the provisions of section 13 of the act of 1893. *Gen. Stat.*, p. 3239. This section enacts that "it shall be lawful for any company organized under this act to take so much land or material as may be necessary for the construction of any railway built under the provisions of this act, either as an extension of the line of an existing railroad or a new line, not exceeding sixty feet in width, except where a greater amount shall be required for the slopes of cuts and embankments."

The query thus presented is whether the strip in question is to be used for the purpose of either extending the line of an existing road or of building a new road.

The rule of construction to be applied in solving this question is entirely settled. The grant of power is to be strictly construed against the grantee. *Vreeland* v. *Jersey City*, 25 *Vroom* 49; *Loucheim* v. *Hemsley*, 30 *Id.* 149; *New Jersey Zinc and Iron Co.* v. *Morris Canal and Banking Co. et al.*, 17 *Stew. Eq.* 398; affirmed, 2 *Dick. Ch. Rep.* 598.

The words "extension of line of an existing railroad" conveys at once to the mind the idea of the prolongation of a road from one of its termini. It is true that "extension" is sometimes the equivalent of "expansion," and when predicated of space, may mean lateral as well as longitudinal enlargement. A man who says he has extended, or intends to extend, the boundaries of his yard, or the limits of his farm, may mean an expansion of the area of these properties in any direction; but when a man says he is going to extend his lane, or that his neighbors are going to extend a private road, or that the public authorities are going to extend a boulevard, no one would conceive for a moment that he meant that the lane, or road, or boulevard, were to be merely widened.

So, in the present instance, when the legislature spoke of an extension of—not even a right of way, but the line of an existing road—it meant not widening the line of the road, but the protraction thereof. It seems impossible to assign to the word "extension," used in this connection, a meaning equivalent to lateral expansion without resorting to a forced and unnatural construction of the statutory language in favor of the grantee of the right to condemn.

Nor do I think that it can be said that the strip is to be used for a new line. There is one line already existing on the adjoining thirteen-foot strip. The additional line sought to be condemned is to be used as a portion of a single right of way, of which the original strip will be a part. The multiplication of tracks, or switches, or turnouts, can no more make the entire road a new railroad than can the addition of a new portion to an old house transform it into a new structure.

Regarded, therefore, as a line to be used for the purpose of the old road, the land sought to be condemned cannot be said to be necessary for a railroad built as a new line. Nor can we regard the use to which the new line is to be put as one entirely dissociated from the use to which the leased strip is now devoted. If the strip sought to be condemned could be said to be taken for a new line complete in itself, then the statutory limitation respecting the width of the strip taken would become a nullity. The company could as well condemn sixty feet in addition to the leased thirteen feet as it could condemn forty-seven feet, which, with the thirteen feet, is within the statutory limitation; and then, when this alleged new road shall have been completed, the company can condemn an adjoining strip of sixty feet in width, to be used in conjunction with the completed road, and so this process could be repeated indefinitely.

The sixty-foot restriction, however, is only one of the limitations upon the grant of power to take land under the fifteenth section of the act of 1893. If it was the only one, then it may be that the company could take by repeated pur-

chases or condemnations until its route reached the width of sixty feet; but the strip taken must be not only sixty feet or less in width, but must be for the construction of a road built as an extension, namely, the continuation of an existing road, or a strip to be used for a road built as a new line.

As we think this strip is to be used for neither, there exists no legislative authority to support the attempted exercise of the power to condemn.

The judgment of the Supreme Court should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, PITNEY, REED, BOGERT, VREDENBURGH, VROOM, GREEN.    9.