290 So.2d 835 (1974)
STATE of Louisiana
v.
Richard E. REED.
No. 54004.
Supreme Court of Louisiana.
February 18, 1974.
Rehearing Denied March 22, 1974.
*836 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
Murphy W. Bell, Trial Atty., Warren J. Hebert, Baton Rouge, for defendant-appellant.
BARHAM, Justice.
Defendant, Richard E. Reed, was charged with aggravated rape, and was convicted after trial by jury of simple rape, in violation of R.S. 14:43. He was sentenced to serve twenty years in the custody of the Department of Corrections. In this appeal he relies on three bills of exceptions.
At the time of the alleged rape, October 24, 1971, the defendant and the prosecutrix both lived on the same street in North Baton Rouge, 72nd Avenue On that night, the victim and her male companion were out walking, looking for her younger brother. They passed a group of young blacks in front of a bar on Scenic Highway, inquired about the child, and were proceeding on when someone struck the young man and grabbed the victim. The girl was dragged into a ditch, and then around the side of a house where the rape took place. The only eye witness to what occurred was one of the five other blacks, Allen Ginn.
BILL OF EXCEPTIONS NO. 1
This bill was reserved when the State played, as rebuttal testimony, an unsworn, taped statement by a deceased defense witness, Allen Ginn, whose preliminary hearing testimony, which included cross-examination by the State, had been read into the record. Defense counsel objected on the grounds that it denied the defendant the right to cross-examine the witness as to the voluntariness of the statement, and as to the reasons for any inconsistencies. Allen Ginn was the lone person who went back to observe Reed and the prosecutrix after everyone scattered.
Ginn's testimony at the preliminary hearing was favorable to the defendant *837 and strongly supported his defense of consent. Ginn stated he had seen the prosecutrix around, that it appeared to him that she and Reed knew each other prior to the incident, that she told someone to hit the white boy (McAllister), and that the group scattered after the hit. When he went back he saw the couple and they appeared to be making love; they were not struggling, she was not screaming, talking or asking for help. He told Reed to leave the girl alone because he might get in trouble for fooling around with a white girl. The witness' prior statement to the police was pointed out by defense counsel at the preliminary hearing. The State cross-examined the witness, but did not use the prior statement in cross-examination and made absolutely no reference to it. The transcript of the preliminary examination testimony of a witness may be used at the trial of the case for any purpose when the witness is deceased.[*] Therefore, the testimony of Ginn was properly admissible in this case. This rule has no application to the taped statement which was not a part of the preliminary examination.
The taped statement was made to the police around 4 a. m. the morning after the rape, when Ginn was being interrogated as to his knowledge of the incident. He said Reed hit the white boy (though at trial McAllister testified that it definitely was not the defendant who hit him) and grabbed the white girl when she fell, while all the others were scattering. When he went back, the girl was lying in a ditch and Reed was standing over her. Ginn told Reed to leave her alone, that "this was not cool", but Reed told him he didn't know what he was talking about. In both instances he testified the group was walking along drinking wine together and having a friendly conversation. At the time of his police questioning, he said he didn't want to get involved, and he didn't want to serve time for anyone else.
The admission of the unsworn taped statement was error. R.S. 15:493 provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
This article has always been strictly construed. The proper foundation must be laid. State v. Rogers, 256 La. 447, 236 So.2d 795 (1970). There has been no exception for the death of a witness; Demasi v. Whitney, 176 So. 703 (Orleans La.App. 1937), or for rebuttal evidence, State v. Augusta, 199 La. 896, 7 So.2d 177 (1942). This is also the general rule in the rest of the country as pointed out by McCormick in the 2d ed. of Evidence, § 37, note 52. See Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).
The admission of the statement was reversible error because the codal requirement of laying the proper foundation was not complied with. The jurisprudence has construed this to mean there are no exceptions to this rule, not even for the death of a witness. The error was compounded by the fact that the statement was unsworn. C.Cr.P. Art. 776, State v. Bussey, 162 La. 393, 110 So. 626 (1926). Additionally, the admission denied the defendant his right to *838 confront the witnesses against him as provided for by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 9 of the Louisiana Constitution. In the context of an inflammatory rape trial, the admission of this statement was highly prejudicial to the defendant.
Allen Ginn was a key defense witness. He was the only person who observed what took place between the prosecutrix and the defendant. While under oath at the preliminary hearing, his testimony was favorable to the defendant and strongly supported his defense of consent and his story of having had sexual relations with the prosecutrix prior to the alleged rape. His prior inconsistent statement (at police headquarters in the early morning hours the day after the alleged rape) was not under oath. At that time he admitted he was scared, he did not want to get involved, and he did not want to serve time for anyone else. This statement was referred to by defense counsel at the preliminary hearing. The State was on notice the witness had made a prior statement; they cross-examined him, but not about the statement. The State had the opportunity to impeach the witness, but failed to do so.
Admission of the unsworn taped statement by the deceased witness, Ginn was reversible error under Code of Criminal Procedure Article 921 because it violated both statutory and constitutional rights of the defendant.
Having found merit in Bill of Exceptions No. 1, we will not consider the other bills reserved. The defendant's conviction and sentence are reversed, and the case is remanded for re-trial.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
Since the witness was dead at the time of trial, his testimony at the preliminary hearing, favorable to the defendant, was offered in evidence by the defendant and properly admitted at the trial. See LSA-C.Cr.P. Art. 295.
The question raised is whether the State can introduce the witness' prior inconsistent statement in evidence for consideration by the jury, along with the testimony.
The majority holds that the statement cannot be introduced in evidence, because the foundation questions set forth in LSA-R.S. 15:493 cannot be asked. I believe the better rule is to the contrary.
The jurisprudence is divided on this point. There is a growing list of cases, still the minority, that hold that the preliminary questions are unnecessary for the use of an inconsistent statement when the witness is dead. A contrary rule would allow one party to use the favorable testimony or deposition of a deceased witness and insulate it from impeachment. See Fletcher v. Henley, 13 La.Ann. 191, 192 (1858); Chany v. Hotchkiss, 79 Conn. 104, 63 A. 497 (1906); People v. Collup, 27 Cal.2d 829, 167 P.2d 714 (1946); People v. Redston, 139 Cal. App.2d 485, 239 P.2d 880 (1956); People v. Rosoto, 58 Cal.2d 304, 23 Cal.Rptr. 779, 373 P.2d 867 (1962); McConney v. United States, 9th Cir., 421 F.2d 248, cert. den. 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1970); Carver v. United States, 164 U.S. 694, 17 S.Ct. 228, 41 L.Ed. 602 (1897); 20 So.Cal.L.Rev. 102 (1946).
This rule, allowing the trial judge discretion to admit the inconsistent statement without the preliminary questions when the witness is dead or absent, has been adopted in several model codes of evidence. See Rule 65, Uniform Rules of Evidence; Rule 106 American Law Institute Model Code of Evidence; Rule 613, Proposed Rules of Evidence for United States Courts and Magistrates.
It has also been adopted by statute or court rule in several jurisdictions. See, e. g., Kan.Stat.Ann. § 60-462 (1965); N.J. Rule of Evidence 65, N.J.Stat.Ann. § 2A:84A (1967); California Evidence Code *839 § 1202 (1967); 18 Ky.Rev.Stat. 167 § 43.08 (1953).
In People v. Collup, supra, the Supreme Court of California stated:
". . . [T]he goal of all judicial proceedings is to bring before the trier of fact all pertinent evidence. Hence, the rule allowing the use of former testimony is a salutary expedient in the administration of justice. But it is equally clear that by reason of the same principle the impeaching evidence should be admitted for what it is worth. It is also evidence which throws additional light upon the case."
The preliminary examination in Louisiana is not a trial, but an inquiry to determine only whether probable cause exists to charge a person with a crime. LSA-C. Cr.P. Art. 296. Full presentation of the State's case is not required. To prohibit the state from impeaching the testimony of a witness because of the failure to cross-examine on this point at the inquiry is a harsh rule, depriving the jury of significant evidence. The defense, being aware of the prior statement, was not caught by surprise, nor is there any suggestion that the State was in bad faith.
The decision of the United States Supreme Court in Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), relied upon by the majority, is not directly in point, since it involved testimony given at previous trial, at which there is a full presentation of the evidence and impeachment is fully utilized.
In Carver v. United States, supra, the United States Supreme Court explained the decision as follows:
"That case . . . was put upon the ground that the witness had once been examined and cross-examined upon a former trial."
In my opinion, LSA-R.S. 15:493 applies only to the oral examination of a witness who testifies at the trial. I would affirm the conviction.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I cannot agree that the introduction of Ginn's taped statement made shortly after the incident leading to the rape charge had any prejudicial effect whatsoever. Ginn's statement at the preliminary hearing supported the defense theory that the victim consented to sexual intercourse. The prior inconsistent taped statement, to the contrary, denied that sexual intercourse occurred between the defendant and the victim. The defendant Reed, according to the taped statement, was "standing oer her" the victimand her clothes were not off. According to the taped statement, Ginn told Reed to "leave her alone." On cross-examination at the trial Reed admitted that this was a correct version of what transpired when Ginn spoke to him and the girl. At the very least, if the jury chose to believe Ginn's taped statement in preference to his testimony at the preliminary hearing, it would only serve to exonerate the defendant of any guilt. It is true the taped statement would disclose an inconsistency in Ginn's utterances on the two occasions, but neither of the inconsistent versions would prejudice the defendant. La.Code Crim.Proc. art. 921.
The statute relied upon by the majority was obviously drafted to apply to a live witness, for when the credibility of a witness is to be impeached by proof of any contradictory statement "he must first be asked whether he has made such a statement." Of course, this cannot be done when the witness is dead, as in this instance, and the law cannot apply a statute to a situation which does not exist. It is impossible to enforce Section 493 here. No statutory rule exists, therefore, to cover the situation the instant case presents.
*840 The State takes the position that it was unaware of the existence of the taped statement at the time of the preliminary hearing, and for that reason it could not cross-examine the witness Ginn relative to the inconsistency in the different versions of the facts he gave on separate occasions. Thus the State should be given an opportunity, it is argued, to show any inconsistency in the witness' testimony at the preliminary hearing when the inconsistency becomes known after the preliminary hearing and after the death of the witness whose credibility is to be impeached. In other words, the impeacher had no opportunity to cross-examine Ginn at the preliminary hearing on the inconsistent statement because the inconsistency did not come to his attention until after Ginn's death and after the preliminary hearing. III Wigmore on Evidence, 3d ed. ¶ 1030, 1033; Uniform Rules of Evidence No. 65. People v. Collup, 27 Cal.2d 829, 167 P.2d 714 (1946).
Thus when it is impossible to lay the foundation which Section 493 of Title 15 requires, the impeaching evidence should nevertheless be admissible to get the full truth before the jury. The fact that the witness cannot, because of his demise, explain the inconsistency does not warrant the rejection of the inconsistent statement.
Here we have the actual voice of Ginn to a statement which is entirely voluntary, as the tape itself makes clear. It is my view, therefore, that the trial judge was permitted to adopt a rule of reason to support his ruling. State v. Goodwin, 189 La. 443, 179 So. 591 (1938); cf. State v. Melerine, 236 La. 929, 109 So.2d 471 (1959); State v. Hudon, 103 Vt. 17, 151 A. 562 (1930); V Wigmore on Evidence ¶ 1576 (3d ed. 1940).
In his dissenting opinion Chief Justice SANDERS has cited respectable authorities to support this position; they are authorities which are contrary to the majority view. Since the issue is res novo in this Court, and the factual context presents a situation not governed by statutory law, the Court was free to formulate a rule permitting the admission of the inconsistent statement.
I respectfully dissent.
NOTES
[*] C.Cr.P. Art. 295:

"* * *
"The transcript of the testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or cannot be found, and that the absence of the witness was not procured by the party offering the testimony.
"* * *."