324 So.2d 373 (1975)
STATE of Louisiana
v.
Richard REED.
No. 56691.
Supreme Court of Louisiana.
December 8, 1975.
Rehearing Denied January 16, 1976.
*375 Vincent Wilkins, Jr., Acting Director, Roland T. Huson, III, App. Counsel, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, James E. Boren, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Richard Reed was charged in an indictment with committing aggravated rape, a *376 violation of R.S. 14:42. He was tried by jury and found guilty of simple rape on January 12, 1973. He was sentenced to serve twenty years imprisonment at hard labor. On appeal, this Court reversed his conviction and remanded the case for a new trial. State v. Reed, 290 So.2d 835 (La.1974). This Court held that the introduction into evidence, on rebuttal, of a tape recorded statement given by a witness was erroneous. The taped statement was introduced to impeach that same witness' testimony from a preliminary hearing which had been introduced in transcript form by the defense. Because the witness had died before the case went to trial, no foundation could be laid by the state to prepare for the introduction of the impeaching, tape recorded statement as is required by La.R.S. 15:493.[1] Hence, the admission of the taped statement was held to be reversible error.
Reed was retried beginning on July 22, 1974 and again convicted by a jury of simple rape. On August 14, 1974 he was again sentenced to serve twenty years at hard labor, with credit for time served.
Reed now appeals this second conviction to this Court, relying on twenty-nine assignments of error. Seven of these assignments were not briefed and thus may be deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974). The remaining twenty-two assignments were consolidated in defendant's brief into six general classifications. These classifications include: 1) the jury selection; 2) the admission into evidence of an exculpatory statement made by defendant to the police; 3) the admission into evidence of defendant Reed's testimony at his prior trial on this charge; 4) alleged prejudicial remarks made by the prosecutor; 5) the denial by the trial judge of defendant's motion for a directed verdict; and 6) an alleged comment upon the evidence by the trial judge.
JURY SELECTION: Assignments of Error Nos. 1-4
The defendant assigns four errors relating to the selection of the petit jury which tried him. Defendant urges first that the Louisiana procedure which was in effect at the time of defendant's trial unconstitutionally discriminated against women. Defendant admits that his trial took place before the United States Supreme Court decision in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), which held that the Louisiana system of making women register in order to serve on juries was unconstitutional. In Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the United States Supreme Court held that the Taylor decision was not constitutionally required to be applied retroactively. Then, in State v. Rester, 309 So.2d 321 (La.1975), the Louisiana Supreme Court held that the Taylor holding would not be applied retroactively in Louisiana. This assignment is without merit.
Defendant further argues that the petit jury was unconstitutionally constituted because the state peremptorily challenged every prospective juror who was black.
In Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court held that the fact that the prosecutor uses his peremptory challenges to strike every qualified member of the defendant's race from the jury panel does not constitute a denial of due process or equal protection, where there is no sufficient showing of a historical pattern of exclusion. The Court stated that "purposeful discrimination may not be assumed or merely asserted.. . . It must be proven . . . ." 380 U.S. at 205, 85 S.Ct. at 827. Defendant argues that Swain imposes an impossible burden of proof, and proposes a new *377 test for determining a historical pattern of exclusion. This proposed test is the number of lawsuits in which the issue is raised, and defendant cites seven cases in which the issue of systematic exclusion of blacks from jury service in East Baton Rouge Parish has been raised.
Defendant's argument is without merit. This Court adheres to the rule of Swain and will not overturn a conviction on the basis of systematic exclusion of blacks through peremptory challenges by the state absent proof of that systematic exclusion.
Defendant urges that the trial court erred when it denied defendant's motions that two prospective jurors be challenged for cause. One of the prospective jurors stated during his voir dire examination that he was a reserve deputy sheriff and had once ridden with a policeman who was to be a state witness.
Article 797 of the Louisiana Code of Criminal Procedure states in part that the state or the defendant may challenge a juror for cause on the ground that:
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict."
This article does not specifically include a relationship between a prospective juror and a witness, but the defendant argues that the article should be jurisprudentially extended to allow challenge for cause on the basis of the relationship. Although a juror's relationship with a witness is not specifically included in Section 3, it might be argued that the relationship could affect the partiality of the juror such that it is covered by Section 2 of Article 797. In the case before us, however, we do not find a reasonable basis to conclude that the relationship between the witness and this prospective juror could have caused the juror to fail to render an impartial verdict. The record before us reveals that the trial court questioned the juror, who asserted that he could be fair and impartial to the defendant, that he knew nothing of the facts of the case, that he could base his verdict solely on the evidence presented at trial, that he could afford the defendant the presumption of innocence and require proof beyond a reasonable doubt to convict. The prospective juror also declared that the fact that he had ridden on patrol with the witness one time several months prior to the trial date would have no effect on him when he heard the witness testify. Because the trial judge was thoroughly satisfied that the potential juror would be impartial, he did not err when he overruled defendant's challenge for cause. See State v. Douglas, 256 La. 186, 235 So.2d 563 (1970).
The other prospective juror who was challenged for cause had stated on voir dire examination, among other things, that he felt that the "races should not mix." Defendant argues that, in a case where the defense was that the white victim and the black defendant had engaged in consensual sex, this opinion was sufficient ground for challenging him for cause under C.Cr.P. art. 797(2). That section, quoted above, states that the primary objective of the trial judge is to determine whether the juror "can render an impartial verdict according to the law and the evidence."
This prospective juror stated that he could be a fair and impartial juror, *378 could apply the law as given by the court, and would believe evidence that a white woman and a black man had engaged in consensual intercourse. This Court has recently held that a prospective juror's opinion about the inadvisability of racial intermarriage, essentially the same opinion harbored by this juror, does not prove that he cannot be an impartial juror. State v. O'Conner, La., 320 So.2d 188, decided October 1, 1975. Although the prospective juror in the instant case did respond to one question with the statement that the "races should not mix," this was an isolated, though perhaps candid, comment among a multitude of additional responses which established his ability to be impartial. In light of the prospective juror's responses as a whole, we do not find that the trial judge erred when he overruled defendant's challenge for cause.
These assignments of error lack merit.
EXCULPATORY STATEMENT: Assignments of Error Nos. 12, 13, 18
The second argument defendant makes is that it was error for the trial judge to allow the state, in its case in chief, to play to the jury a tape-recorded statement made by defendant. The statement had been given to the police in the early morning hours of the day following the evening of the crime. The defendant had been properly Mirandized, although he had refused to sign a waiver of rights form. In the statement, defendant Reed admitted walking down a street with the victim on the night in question, along with a group of other young men. He stated that someone hit the girl's boyfriend, and as the group scattered, he saw another boy drag the victim into a ditch. He did not admit to having intercourse with the victim, consensual or otherwise, nor did he say that he saw anyone else have intercourse with her. This statement was admitted at trial over objection by defendant.
In order for any evidence to be admissible, it must be relevant. As defined by the La.R.S. 15:441,
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
And evidence that would be inadmissible for one purpose may be properly admitted if it is admissible for another. La.R.S. 15:442. The statement at issue here would have been inadmissible if it had been introduced solely to impeach defendant's credibility, because it was introduced in the state's case in chief, not after the defendant had testified.[2] The reason for this is, of course, that a witness cannot be impeached before he takes the stand. La.R.S. 15:484. Since the defense attorney had stated in his opening statement that the defendant would establish that he did have intercourse with the victim, but that she had consented, the introduction of this exculpatory statement did tend to "impeach" the case which the defendant's attorney promised to establish. Even if we do not accept the state's contention that it is entitled to impeach the case which defendant's attorney promised to establish, it does not *379 follow that the statement is necessarily inadmissible, if it were relevant for another purpose.
This statement was admissible because it was relevant to establish two elements of the state's case. First, it was an admission that the defendant was present at the scene of the crime. Only two of the six or eight people who were at the scene testified at the trial, the victim and her boyfriend. The victim positively identified the defendant as the man who raped her, but her boyfriend testified that he could not identify defendant as being in the group of young men who had walked down the road with them that night. In light of this evidence, it was important for the state to establish conclusively that defendant was at the scene of the crime. Defendant's statement to police was relevant because it admitted that he was at the scene.
Likewise, defendant's statement tended to negative a defense of consent, and for that reason was properly a part of the state's case. It is the state which bears the burden of proving beyond a reasonable doubt that the crime of rape occurred, and one of the elements of rape is that it is intercourse "without the lawful consent of the female." La.R.S. 14:42, 43. In other words, it is not a defendant who must prove that the victim consented, but the state which must establish beyond a reasonable doubt, among other things, that the victim, non-consenting, was raped.[3] In his statement to the police, defendant described an incident which began with two assaults. (The victim's boyfriend was hit on the side of the head, and the victim was dragged into a ditch). It is unlikely that consensual intercourse, unaffected by fear, would have succeeded these assaults. Defendant's statement, therefore, is relevant to the state's case because it tends to negative the possibility that the intercourse was purely consensual.
We find, therefore, that the exculpatory statement which defendant made to the police was properly admitted into evidence.
These assignments of error lack merit.
PRIOR TRIAL TRANSCRIPT: Assignments of Error Nos. 14-17 and 19
In his previous trial, defendant took the stand to testify that he had had intercourse with the victim on the evening in question but that he and she knew each other because they lived in the same neighborhood, that they had had intercourse approximately six times previously, and that she had consented to their intercourse on this occasion. At his second trial on this charge, the state introduced, over defendant's objection, and as a part of its case in chief, the transcript of this testimony. The trial judge ruled that the transcript was admissible and allowed it to be read to the jurors.
The defendant initially argues that the trial judge erred when he admitted this transcript because the admission violated defendant's fifth amendment privilege against self-incrimination. Although defendant admits that this privilege may be waived, he argues that a waiver in one proceeding does not affect his right to invoke the privilege in a separate and independent proceeding, citing Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961). This case is inapposite to the issue here. It involved a retrial situation in which defendant did not testify at his first or second trial on the charge and then did take the stand at a later trial, whereupon the prosecution attempted to use the fact of defendant's prior silence to *380 impeach his testimony at the later trial.[4] In the instant case, of course, defendant took the stand at the first trial, and it was at the second trial, before the defense presented its case, that the state offered it as evidence against him. Contrary to the assertion of defendant, the long-standing federal rule in this area is that a defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); United States v. Bohle, 475 F.2d 872 (2nd Cir. 1973); Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108 (1959), cert. denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012. The introduction of the transcript, therefore, did not violate defendant's privilege against self-incrimination.
Both the state and defense argued at various times the applicability of the case of Harrison v. United States, supra. In that case the United States Supreme Court upset a conviction where first-trial testimony of a defendant, given after the government's introduction of confessions subsequently held unlawful on appeal, was introduced at a second "trial following remand. The Court felt that defendant's testimony from the first trial could not be used in the second because he had been forced by the admission of inadmissible evidence to take the stand at the first trial. Defendant's testimony then became "fruit of the poisonous tree" and hence inadmissible at a later trial. In the first trial of defendant Reed, however, the state introduced only on rebuttal the evidence which was held inadmissible on appeal,[5] Reed having taken the stand before any illegal evidence was introduced. The rule of Harrison does not apply in this case.
Defendant also argues that the trial transcript was inadmissible because its admission violates Article 857 of the Louisiana Code of Criminal Procedure which states that:
"The effect of granting a new trial is to set aside the verdict or judgment and to permit retrial of the case with as little prejudice to either party as if it had never been tried."
Defendant points out that the comment following this article explains that "the slate is wiped clean when a new trial is granted." Defendant concedes that the former transcript could be used for impeachment purposes, notwithstanding the apparently unequivocal language of Article 857, but he virgorously contends that the testimony could not be properly introduced in the state's case in chief.
The full import of Article 857 is not readily apparent from a reading of its language and of the jurisprudence interpreting it. As a minimum, it would seem that the article was intended to mask from the jury members the fact that a defendant before them had previously been tried, with their possible conclusion that he had previously been convicted. Had the prosecutor announced that the statement was prior trial testimony, we would have serious questions about this assignment of error. Instead, we notice that the prosecutor was careful to describe the transcript as "the testimony of the defendant in this matter on a prior occasion" when referring to this transcript in front of the jury. It was defense counsel who made it plain to *381 the jury through his comments that the statement was defendant's testimony at a former trial.[6] In any event, we must, in order to resolve the issue before us, answer this question: would the introduction of the defendant's testimony from his prior trial violate Article 857 so as to prevent the state from introducing that transcript in its case in chief? We hold that it would not. A defendant who has made a trial statement, which is not only voluntary and under oath but also clothed with all of the constitutional protection which our justice system offers, cannot be heard to say that his prior testimony cannot be introduced to a subsequent jury determining defendant's guilt on the same charge. The law must presume that people under oath speak the truth, and we cannot conclude that the law requires us to determine that defendant's prior, presumably truthful, statement could "prejudice" him later. The use of the statement might, of course, cause defendant to suffer some tactical disadvantage. But both parties are inherently prejudiced tactically at a retrial simply because they both have exposed their cases to the other side. As we read Article 857, it does not stand as a bar to merely tactical prejudice. We must conclude, therefore, that a defendant who takes the stand in his own defense is not protected by C.Cr.P. art. 857, when the state, at a subsequent trial on the same charge, seeks to introduce that testimony to a jury, so long as the state does not make it apparent to the jury that the testimony was from a prior trial.
Having concluded, then, that the defendant Reed was not protected from the introduction of this testimony because of the fifth amendment privilege against self-incrimination, the rule of Harrison v. United States, supra, or C.Cr.P. art. 857, we turn to the remaining issue: did the trial judge err when he allowed the introduction of the testimony in the state's case in chief? If defendant Reed had taken the stand at his second trial and testified in a manner inconsistent with his previous testimony, the state could certainly have introduced the statement, after the proper foundation, to impeach his credibility. The state, however, introduced the statement in its case in chief, immediately after it had introduced defendant's exculpatory statement to police, discussed above, and before defendant had had the opportunity to take the stand in his own defense.
As we discussed above, the fact that a statement has the effect of impeaching a defendant's case will not bar its introduction if it has independent relevance. La.R.S. 15:442. This statement has such relevance. The statement tends to prove two elements of the state's case: that the victim did have intercourse on the evening in question, and that the defendant was the person with whom she had intercourse.[7] Because the testimony was relevant to prove these essentials of the *382 state's case, it was admissible irrespective of the fact that it had the effect of impeaching the defendant's previously-introduced exculpatory statement.
This assignment of error lacks merit.
REMAINING ARGUMENTS:
Defendant Reed's other assignments of error raise insubstantial issues relating to these arguments: alleged prejudicial remarks made by the prosecutor, the denial by the trial judge of defendant's motion for a directed verdict, and an alleged comment upon the evidence by the trial judge. We have examined these assignments carefully and have determined that they lack merit.
For the reasons assigned, the conviction is affirmed.
DIXON, Judge (dissenting).
The challenges for cause were erroneously denied.
NOTES
[1] The state could have used the statement when it cross-examined the witness at the preliminary hearing and introduced it then, but desisted from confronting the witness with it at that time.
[2] This exculpatory statement was also introduced at defendant Reed's first trial on this charge, but it was introduced on rebuttal to impeach Reed's credibility after he had taken the stand in his own defense. Reed had admitted on the stand that he had had intercourse with the victim, but testified that she had consented. To impeach his testimony, the state introduced this earlier exculpatory statement to police in which he denied having had intercourse with her. Reed had not taken the stand prior to the state's effort to introduce the exculpatory statement. In fact, he did not ever take the stand at the second trial, except for the limited purpose of testifying as to the voluntariness of the lineup, out of the presence of the jury.
[3] Similarly, in a homicide prosecution, the state bears the burden of proving beyond a reasonable doubt that the homicide was feloniously committed and was not perpetrated in self-defense. State v. Patterson, 295 So.2d 792 (La.1974).
[4] The United States Supreme Court reversed defendant's conviction in Stewart on the grounds that the prosecutor's comments were highly prejudicial.
[5] This Court held that the statement was inadmissible because it violated both a statutory rule (La.R.S. 15:493 which requires that a foundation be laid before the credibility of a witness may be impeached) and defendant's constitutional right to confront witnesses against him (guaranteed by the sixth and fourteenth amendments to the United States Constitution and Article 1, § 9 of the Louisiana Constitution of 1921).
[6] The record reveals the following exchange as the state offered the transcript in evidence:

"PROSECUTOR: This is the testimony of the defendant in this matter, on a prior occasion.
DEFENSE ATTORNEY: Yes. UhSpecifically, Your Honor, it's the testimony of a prior trial, isn't that correct, Mr. Roy?
PROSECUTOR: Beg pardon?
DEFENSE ATTORNEY: It's the testimony of a prior trial, is that correct.
PROSECUTOR: Well, you're saying that. I say it's on a prior occasion, dealing with this matter. I mean, youthose are your words. I"
[7] It should be noted that had the defendant consistently admitted that he had intercourse with the victim on the night in question, as his attorney maintained in the opening statement, then there would have been no need for the state to introduce further proof of them. However, after the state began to put on its case, the defense attorney changed his position. In his cross-examination of state witnesses and in his fervent attack on the victim's identification of the defendant at the line-up, the defense attorney made it clear that he was not conceding that it was Reed who had intercourse with the victim on the evening in question. Therefore, the state properly attempted to prove the elements of identity and intercourse.